BOARD OF COMM'RS OF SHAWNEE CO. V. A. C. BECKWITH.

1. ROADS AND HIGHWAYS; *Taking Private Property.* No man can be divested
   of his land, or of any part thereof or interest therein, through the exercise
   of the power of eminent domain, or of any other power, except under the
   provisions of express and positive constitutional or statutory law; and
   he cannot be divested through the exercise of such power of any more
   or greater interest in his land than the constitution or statutes expressly
   provide for.

2. ———— *Interest acquired by the Public in Highways.* In this state it
   would seem that by the laying out and establishing of a road or highway
   the public acquire only an easement in the land. The fee in the land
   never passes to the public, but remains in the original owner.

3. ———— *Damages to Land-Owner; Hedge Fences.* Where the plaintiff
   claims damages against a county for laying out a public road over his
   premises, and one of the items of damages claimed is compensation for
   a hedge standing in the place where the road is located, it is error for
   the court to exclude evidence tending to show that the hedge could be
   removed without any material injury to it, and that the cost of removal
   would be greatly less than the value of the hedge.

4. ———— *New Fences.* Where the laying out and establishing of a
   highway makes it necessary for the land-owner to build a new fence
   entirely across his land in order to use his land as he had previously
   done, he is entitled to full compensation for building such new fences.

*Error from Shawnee District Court.*

BECKWITH was the owner of a quarter-section of land in
Shawnee county, which he occupied and cultivated as a farm.
The land adjoining on the west was also cultivated as a farm.
Both farms were inclosed, the fences on the north and south
lines respectively connecting at the division line. The par-
tition fence was an Osage orange hedge, the south eighty rods
of which was owned by *Beckwith,* and the north eighty rods
by one Stanley. *Beckwith* also had thirty-two rods of hedge
on the south line of his farm. The plaintiff in error estab-
lished a public highway along the entire length of the west
line of *Beckwith's* farm, fifty feet wide; one-half being taken
from *Beckwith's* farm, and the other half from Stanley's.
Also the highway was established sixty-four rods on the south
line of *Beckwith's* farm. *Beckwith* claimed damages of the

county by reason of the establishment of this road. The *Board of Commissioners* refused to allow his claim, and from this refusal he appealed to the district court. *Beckwith* claimed three items of damages. The case was tried at the December Term 1871, and the court awarded *Beckwith* damages as follows: for value of land taken, $70; for value of hedge destroyed, $72; for expense of fencing, $321—making a total of $463. The court also found the accruing benefits to *Beckwith's* land by reason of the establishment of the roads to be $142, and gave judgment for *Beckwith* for $321. From this judgment the *Board of Commissioners* appeal to this court, and bring the case here by petition in error.

*Thomas Ryan,* county attorney, for plaintiff in error:

What is the rule of damages so far as the matter of fencing is concerned? The district court held that Beckwith was entitled to compensation for a fence the entire distance—the whole 160 rods—and in this, it is submitted, the court erred. He was only entitled to compensation for the additional fence he would have to build by reason of the location of the road. In the absence of any road there, he was in law bound to build one-half (80 rods) of that partition fence. Fence law, ch. 40, Gen. Stat., p. 488, §§ 8 to 20. It is evident that he had agreed with Stanley to construct and maintain half of such partition fence, for both he and Stanley were growing a hedge fence, the share of each being set off, accepted, and cultivated. Yet the law laid down by the court below entitled Beckwith to recover the value of his land, the *full value* of his 80 rods of hedge fence, and the cost of building, not only the additional fence (80 rods) imposed upon him by such road, but also the 80 rods which he was bound to and of necessity must build in the absence of any road whatever. Here he not only gets his actual damages, to-wit, the value of his land, the value of his hedge, and the cost of the additional fence imposed by the road, but also the cost of building 80 rods of other fence for which the road is no more responsible than it is for the fence on the east side of his farm. This is clearly

error; and when every aggrieved land-owner in the county is insisting that the plaintiff in error shall march to this same kind of music, it becomes important that the error be corrected.

*Martin, Burns & Case,* for defendant in error:

1. That Beckwith is entitled to the value of the land appropriated, is not an open question. That the expense of building and maintaining additional fencing, rendered necessary by the establishment of the road, is a proper item to be considered in assessing his damages, is we think equally as well settled. See 10 Minn., 267; 6 Wis., 636.

2. The remaining question is, Can the defendant in error recover the value of his hedge destroyed? We say that he can. That the public may appropriate the land of defendant in error for a public highway, we do not question; but in so doing, the public must pay him for the land appropriated, and such incidental damages as naturally flow from the establishment of the road. Taking this as the true rule, how stands this case? Beckwith was a farmer. His whole farm was inclosed, and he had the same under cultivation. There was a partition hedge of Osage orange between his farm and Stanley's. Beckwith also had thirty-two rods of hedge on the south line of his farm. On this condition of affairs, a highway is established on the line between Stanley and himself. Now, what results from the establishment of this road? He is deprived of a portion of his land; 112 rods of hedge is destroyed; and in order to reinclose his farm he is compelled to build 224 rods of fence on his own land. These are the additional burdens imposed upon him in consequence of the establishment of the road. But it is insisted that Beckwith is getting pay for 80 rods of fence that the road is not responsible for. We do not so understand it. This 80 rods is destroyed and utterly lost to Beckwith. It is however insisted that he might have transplanted the hedge, and thus saved it. The plain answer to this proposition is, that the law does not demand any such act. He is not

required to assume the risk and hazard of transplanting this hedge any more than he would be required to remove fruit trees, or to tear down and remove a stone house had one been standing inside the line of the road. For all legal purposes this hedge was attached to and substantially formed a part of the land. If the public propose to take the land they must also take and pay for what is found on it. (Dillon on Corporations, 475, note.) We submit that §§ 8 to 20 of ch. 40, Gen. Stat., 488, have nothing to do with the case. It is true, that Beckwith was only bound by law to maintain one-half of the partition fence under certain circumstances, but he was not bound to maintain any part of it unless he availed himself of the use of it. But the action of the plaintiff in error has rendered it impossible for Beckwith to maintain a partition fence; and having destroyed both his hedge, and his right to maintain it, plaintiff in error now insists that he ought not to be paid for it.

The opinion of the court was delivered by

VALENTINE, J.: This action was prosecuted by A. C. Beckwith, as plaintiff, against Shawnee county, for damages claimed to have resulted from the establishment of a certain public road or highway across the plaintiff's land. The road was located on the west line of plaintiff's land — (one-half being located on the plaintiff's land, and the other half on an adjoining proprietor's land) — the west line of the plaintiff's land running through the middle of the road from the north side of the land to the south side. The plaintiff claimed a judgment for the full value of the land taken, the full value of some hedge that was growing on the west line of his land which came within the road, and for the entire cost of building a new fence across his land along the line of the road as laid out. The case was tried by the court, without a jury. On the trial the county offered to prove that the said hedge could be removed without any material injury to it, and that the cost of the removal would be greatly less than the value of the hedge. The plaintiff objected to the evidence; the court sus-

tained the objection, and the defendant excepted. The court afterward found upon the evidence in favor of the plaintiff, and rendered judgment for him for the full value of the land taken, for the full value of the hedge, and for the entire cost of building said new fence, deducting from the aggregate of said sums the amount of the benefits which accrued to the plaintiff by reason of the establishment of said road. The only question involved in this case is, what damages had the plaintiff a right to recover? We suppose it will be admitted that he had a right to recover full compensation for all direct losses or damages which he sustained by reason of the establishment of said road, minus all direct gains or benefits. Then what were his damages? We suppose it is fundamental that no man can be divested of his land, or any part or portion 1. Highways. thereof, or any interest therein, through the exer-
Taking private property. cise of the power of eminent domain, (or in fact through the exercise of any other power,) except under the provisions of express and positive constitutional or statutory law, and that he cannot be divested through the exercise of such power of any more or greater interest in his land than the constitution or statutes expressly provide for. In this state the statutes provide for the establishment of public roads and highways, (Gen. Stat., 897, ch. 40,) but both the constitution and the statutes are silent as to how much of the land, or what interest therein shall pass to the public, and how much of the land or what interest therein shall remain with the original proprietor. Therefore we would infer that noth-
2. Highway; interest acquired ing connected with the land passes to the public
by the public. except what is actually necessary to make the road a good and sufficient thoroughfare for the public. The public obtains a mere easement to the land. It obtains only so much of the land, soil, trees, etc., as is necessary to make a good road. It obtains the right for persons to pass and repass, and to use the road as a public highway only, and nothing more. (*Caulkins v. Mathews*, 5 Kas., 199, 200, and cases there cited.) The fee in the land never passes to the public, but always continues to belong to the original owner. He continues to

own the trees, the grass, the hedges, the fences, the buildings, the mines, quarries, springs, watercourses, in fact everything connected with the land over which the road is laid out, which is not necessary for the public use as a highway. (Angell on Highways, ch. 7, §§ 301 to 312, and cases there cited.) He may remove all these things from the road, or use and enjoy them in any other manner he may choose, so long as he does not interfere with the use of the road as a public highway. No other person has any such rights. In fact, the original owner has as complete and absolute dominion over his land, and over everything connected therewith after the road is laid out upon it, as he had before, except only the easement of the public therein. In the present case there is no claim or even pretense that the said hedge was needed for the road.

3. Hedge fences; damages. The plaintiff therefore had absolute control over it. It was his. If it was worth anything standing in the road — if it was worth any thing for removal — if it would cost less to remove and transplant it than it would be worth after its removal, then the plaintiff should not have received full compensation for its value. He should merely have received compensation for the cost of its removal to the place where needed, and for any depreciation in value caused by such removal. With these views we are of the opinion that the court below erred in excluding said evidence. We perceive no other errors.

If it was necessary for the plaintiff to build a new fence entirely across his land in order to use his land as he had previously done, then full compensation should have been allowed in estimating his damages; and with the 4. Damages; new fences. record brought to this court we cannot say that such a fence was not necessary. If the hedge could have been removed to the place where he wanted the fence, so as to make a good fence, then he should have removed it; and then it would not have been necessary for him to build a new fence entirely across his land. The hedge would have been sufficient as a part of such fence.* Our statutes do not compel

[* It would seem from this, and the preceding paragraph of the opinion, (although not so specifically stated,) that in any case, where a highway is laid out and opened

adjoining proprietors of land to build partition fences where the parties otherwise agree. (Gen. Stat., 488, ch. 40, § 8.) And if a public road should be laid out on the line between such adjoining proprietors, each would be entitled to have the cost of all additional fences which he would be required to build in order that he might use his land as he had previously done considered in estimating the amount of his damages. The judgment of the court below is reversed, and cause remanded for a new trial.

All the Justices concurring.