**LINCOLN AMERICAN CORPORATION, Plaintiff,**

v.

**VICTORY LIFE INSURANCE COMPANY, Defendant.**

Civ. A. No. 74–31–C6.

United States District Court, D. Kansas.

March 15, 1974.

Robert N. Partridge, of Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for plaintiff.

Herbert A. Marshall, of Marshall, Hawks, McKinney & Hendrix, Topeka, Kan., John R. Bancroft, Wm. H. Curtis, Kansas City, Mo. (of Morrison, Hecker, Curtis, Kuder & Parrish), for defendant.

## MEMORANDUM OPINION AND ORDER

THEIS, District Judge.

This matter is presently before the Court pursuant to plaintiff's application for equitable relief in the form of mandamus requiring the defendant, Victory Life Insurance Company, to supply a list of its stockholders to a special master appointed by the Court in order

to facilitate the transmittal of plaintiff's proxy statements and other material approved by the Kansas Commission of Insurance in accordance with regulations promulgated under K.S.A. § 40–272. Diversity of citizenship is present and the plaintiff alleges an amount in controversy exceeding $10,000.00. It does not appear to a legal certainty that the amount claimed by plaintiff is excessive and, accordingly, the Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332. City of Boulder v. Snyder, 396 F.2d 853 (10th Cir. 1968). After hearing oral argument and being fully advised in this matter, the Court makes the following findings and orders.

Plaintiff is the largest single stockholder of the defendant owning directly or indirectly 47,824 shares of the defendant's common stock which represents in excess of 26% of defendant's issued and outstanding stock, excluding its treasury stock. The plaintiff is seeking managerial representation and eventual control of Victory Life Insurance Company. This is only one of a number of suits presently pending in this Court arising out of the plaintiff's attempted take-over.

The basic facts are substantially not in dispute. The annual meeting of stockholders of defendant is scheduled to be held on March 21, 1974, at Topeka, Kansas. In anticipation of the meeting, the plaintiff submitted proxy material to the Kansas Commissioner of Insurance for solicitation approval in accordance with regulations promulgated pursuant to K.S.A. § 40–272 (regulation 40–11–1 et seq.). In addition, the plaintiff requested that the Insurance Commissioner require the defendant to transmit its proxy material to Victory's stockholders simultaneously with the transmittal of management's proxy material, at the plaintiff's expense. The Kansas Insurance Commissioner refused to accede to the plaintiff's request.

The Kansas Insurance Commissioner reasoned that the plaintiff's requested procedure was barred by K.S.A. § 40–2106, which provides in pertinent part:

"Any member or stockholder of any stock or mutual life, stock fire or stock casualty insurance company organized under the laws of this state may make demand to examine the membership record or records pertaining to stock issued and outstanding and the holders thereof, of such company by filing a verified application with the commissioner of insurance of this state setting forth specifications of mismanagement on the part of the officers of such company. Upon the filing of such application, the commissioner of insurance shall conduct a hearing thereon. . . . Unless the commissioner finds from the evidence produced at said hearing, that there is reasonable cause to believe that the officers of said company have mismanaged the affairs of said company, such application shall be denied. . . ."

The Commissioner noted that this statute provided for the exclusive method of obtaining stockholders' lists; that the plaintiff had not followed the procedure therein provided for; and that utilization of the procedure recommended by the plaintiff would permit it to accomplish indirectly that which the statute directly forbade, i. e., the disclosure of stockholder names returning proxies to the plaintiff. Since the defendant was unwilling to voluntarily accede to the plaintiff's request, this action was filed.

By Order of this Court entered on March 4, 1974, the Court found that a simultaneous mailing of proxy material was neither: (1) necessary to the protection of the plaintiff's interests; nor (2) required under the Commissioner's regulations. Accordingly, the defendant was permitted to mail its proxy material which had been approved by the Commissioner. In addition, the Court held this action in abeyance pending Commissioner approval of the plaintiff's proxy material, since that was a necessary condition precedent to any mailing. The Court has been informed that approval has now been granted. This action is therefore now ripe for final resolution.

The plaintiff seeks to solicit proxies to: (1) gain representation on Victory's board of directors; (2) to amend the bylaws to require an annual certified audit of the company's books to be reported quarterly; and (3) to amend the bylaws to require a majority vote of the stockholders prior to indemnification or payment of expenses incurred by any director, officer or employee in connection with the defense of claims or lawsuits arising out of conduct in the performance of their duties. It contends that due to a hiatus in the Kansas law and the regulations promulgated thereunder by the Kansas Insurance Commissioner it is estopped, as a practical matter, from transmitting its material to Victory's stockholders.

The plaintiff requests the Court to exercise its broad equity powers to fashion a means by which its proxy material may be distributed. In order to insure the confidentiality of the names and addresses of the responding stockholders in accordance with K.S.A. § 40–2106, plaintiff seeks: (1) the appointment of an independent and disinterested special master, at plaintiff's cost, to send and receive plaintiff's proxy material; (2) an order requiring the defendant to supply the special master so appointed with the names and addresses of Victory's stockholders; (3) a protective order limiting access to the returned solicitations and the stockholders' list to plaintiff's counsel, under direction not to reveal confidential information to their client or any one else; and (4) an order retaining jurisdiction to supervise the conduct of the proxy solicitations and to enter such further orders as may be just and equitable.

By following the procedure outlined above, the plaintiff contends that no undue hardship will befall the defendant, its stockholders or its policyholders, and that irreparable injury to it will be prevented. Otherwise, the plaintiff asserts that it will be effectively disenfranchised and denied the benefits to be derived from proxy solicitation, which will damage its pecuniary interests and the overall interests of the defendant company and its stockholders.

The defendant does not contest the Court's jurisdiction or its general authority, under its broad equitable powers, to grant relief in the nature sought by the plaintiff. Unquestionably, the Court has the power in a case of this nature to fashion relief consonant with law, the parties' rights, and the attendant equities. See J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L. Ed.2d 423 (1964); Cooke v. Teleprompter Corporation, 334 F.Supp. 467, 473 (S.D.N.Y.1971). The defendant does contend, however, that relief is barred in this instance since: (1) the plaintiff is guilty of laches; and (2) the relief sought would violate the spirit, if not the letter, of K.S.A. § 40–2106.

*I. Laches*

Defendant first asserts that a party who comes into equity seeking equity must not be guilty of laches, and that a party is guilty of laches if he (1) is guilty of a lack of diligence and (2) the other party has been prejudiced by the delay, citing First National Bank of Shawnee Mission v. Roeland Park State Bank and Trust Company, 357 F.Supp. 708 (D.Kan.1973). See also, McConnell v. Lucht, 320 F.Supp. 1162 (S.D.N.Y. 1970). The thrust of the defendant's assertion is that the plaintiff could have, and should have, submitted its proposed proxy material to the Commissioner of Insurance well in advance of the annual meeting set for March 21, 1974. Rather, the plaintiff waited until the twelfth hour to gain approval of its material and to seek this relief. Due to the plaintiff's inexcusable delay, the defendant maintains that granting this relief would cause injury to it.

The defendant had sought and obtained approval for its proxy solicitation from the Insurance Commissioner prior to the time this action was instituted. In fact, the defendant was prepared to transmit its proxy material to Victory's stockholders on February 25, 1974, at which time the Court temporarily re-

strained the solicitation. If the Court permits the plaintiff to now transmit proxy material only recently approved by the Commissioner, defendant claims that it will be required to make an additional mailing to its stockholders in order to inform the stockholders of the new agenda matters and to respond to plaintiff's solicitations. The defendant claims that the consequences of such action, which would have been avoided had the plaintiff submitted its proxy material to the Commissioner in a timely manner, would be twofold: (1) the defendant would be put to the expense and inconvenience of reprinting its proxy material to respond to the plaintiff's proposals; and (2) the delays occasioned in responding to plaintiff's proposals would undoubtedly cause the postponement of the annual meeting.

The Court certainly does not quarrel with the proposition stated by the defendant that one who seeks equity must do equity. In addition, there is little doubt but that the plaintiff could have submitted its proxy material to the Commissioner in a more timely manner. Nevertheless, the Court does not believe that the plaintiff's delay bars the relief sought in light of all of the facts and circumstances.

First, it is true that the defendant will necessarily be put to additional expense and inconvenience in preparing and distributing a response to the plaintiff's proxy material. That is, however, a natural and expected concomitant of any proxy fight. In addition, it is clear that the defendant has been on notice for some time that additional matters proposed to be acted upon by the plaintiff at the annual meeting were not covered in its original proxy material. In accordance with regulation 40–11–6 of the Kansas Insurance Commissioner, an amendment to defendant's material or an additional mailing would therefore be required regardless of any action taken by the Court.

Second, although the plaintiff could have provided its material to the Commissioner at an earlier time for approval, the Commissioner's regulations do not place a specific time limitation on proxy solicitations. Admittedly, management must be notified of any proxy solicitations at least seventy days prior to submission for approval under federal proxy rules in accordance with 17 C.F.R. 240.14a–11, but as conceded by the defendant, state, not federal, law controls proxy solicitations involving Kansas insurance companies.

Third, there has been no showing that the annual meeting scheduled for March 21, 1974, cannot be held if the Court grants the relief sought by the plaintiff. The plaintiff's are preparing to distribute their information forthwith, and there is no legitimate reason why the defendant cannot do the same. If the defendant should determine that a postponement of the annual meeting is necessary to assure that their response to the plaintiff's solicitation is meaningful, that will be within their prerogative, but there has been no showing that a postponement would cause undue hardship or injury to the defendant or its stockholders, other than perhaps some inconvenience.

Finally, the granting or denial of equitable relief necessarily involves a balancing of the parties' relative interests and the injury, if any, that would flow from the particular action under consideration. In this instance, the plaintiff has made a prima facie showing that its interests will be seriously injured if it is not permitted to solicit proxies—particularly insofar as the proxies affect the plaintiff's attempt to obtain representation on Victory's board of directors. In addition, plaintiff claims that by denying it the opportunity to distribute its proxy material to Victory's stockholders, the stockholders themselves will be injured by being denied information relevant to the operation of the corporation and the opportunity to make a knowledgeable decision with regard to its management.

In opposition to the plaintiff's interests, the defendant alleges that affording the relief sought would cause it ad-

ditional expense and inconvenience. As previously noted, the Court does not believe that granting plaintiff's relief will injure the defendant to any measurable degree. Regardless, however, when weighed against the plaintiff's interests, the defendant's possible injury is insignificant. Since the defendant has failed to show that plaintiff's proxy solicitation would be in any way inimical to the company or its stockholders, the Court will not preclude equitable relief on the ground of laches.

This brings the Court to the defendant's remaining contention. The defendant asserts that the relief sought by the plaintiff would violate the spirit, if not the letter, of K.S.A. § 40–2106.

II. *Statutory Impediment*

The regulations regarding proxy solicitations promulgated by the Kansas Insurance Commissioner pursuant to K.S. A. § 40–272, clearly anticipate and authorize proxy solicitations by any security holder of a Kansas insurance company, provided certain prerequisites are met. The requirements of the regulations include: (1) that copies of all proposed proxy material be provided to the Commissioner for approval prior to distribution to security holders (40–11–7); (2) that the proxy material contain certain basic information, depending upon the precise nature of the solicitation (40–11–5 & 6); (3) that all proxy material must precede the proxy forms (40–11–11(4) & (5)); (4) that the proxies be limited in degree of authority and period of effectiveness (40–11–10); and (5) that no proxy material shall contain any false or misleading information with respect to any material fact (40–11–9). Besides other insignificant technical requirements, there are no other limitations. The regulations do not, however, provide a method by which security holders may distribute the proxy material, assuming they do not have access to a stockholder list.

Stockholders of private corporations, as opposed to insurance companies, have ready access to the names and addresses of stockholders pursuant to K.S.A. §§ 17–3309, 3310. Accordingly, there is no impediment to their solicitations of proxies. As previously noted, however, the names and addresses of stockholders in Kansas insurance companies are not readily accessible, but rather, can only be obtained by a showing of reasonable cause to believe that the companies' officers have mismanaged the companies' affairs, pursuant to K.S.A. § 40–2106. By, on the one hand, providing a method for proxy solicitations, while on the other hand, restricting access to a stockholder list, an anomalous hiatus is created by Kansas law.

The plaintiff originally sought to fill this hiatus by requesting the Insurance Commissioner to require the defendant to transmit its proxy material at the plaintiff's expense. Since, without protective measures, this procedure would have resulted in the disclosure of some, if not all, of the names and addresses of Victory's stockholders, the Commissioner correctly refused to accede to the plaintiff's request. Without question, K.S.A. § 40–2106 clearly prohibits such a disclosure.

The plaintiff now seeks to fill this hiatus by requesting the Court to appoint a special master and issue an appropriate protective order. If granted, this relief would permit the plaintiff to solicit proxies without compromising the confidentiality of Victory's stockholder list. Having determined that the relief requested by the plaintiff is necessary to the protection of its interests, while not inimical to those of Victory, it would therefore be appropriate if not prohibited by K.S.A. § 40–2106.

In opposing the plaintiff's requested relief, the defendant does not maintain that proxy solicitations are prohibited by the plain and unambiguous language of K.S.A. § 40–2106, in and of itself. It asserts, however, that in construing a statute a court must attempt to give effect to the intent of the legislature in enacting the law. Continental Baking Co. v. Woodring, 55 F.2d 347 (D.Kan. 1931); Southwestern Bell Telephone

Company v. Employment Security Board, 189 Kan. 600, 371 P.2d 134 (1962). The defendant claims that the implicit purpose for restricting access to stockholders' names and addresses by promulgating K.S.A. § 40–2106 was to prevent communications of any nature, including proxy solicitations, which might disrupt or interfere with the orderly management of a Kansas insurance company which has not been shown to be guilty of mismanagement. To hold otherwise, the defendant asserts, would place form over substance and render the legislature's intent meaningless.

The defendant contends that its interpretation of K.S.A. § 40–2106 is supported by the position taken by the Kansas Insurance Department in denying the plaintiff's administrative request, and that an administrative decision of this nature is entitled to great weight. Accordingly, the defendant maintains that compliance with the statute is a condition precedent to any proxy solicitation. Since the plaintiff admittedly did not comply with K.S.A. § 40–2106, equitable relief would therefore be barred by operation of law. The Court is unable to agree with the defendant's position.

■ The Court is of course in agreement with the proposition that an interpretation of state law by a state agency delegated the responsibility of enforcing that law, is entitled to great weight. Town of Clayton v. Colorado & S. Ry. Co., 51 F.2d 977 (10th Cir. 1931); Scammahorn v. Gibraltar Savings & Loan Association, 195 Kan. 220, 404 P. 2d 165 (1965). As previously noted, however, the Commissioner neither held nor intimated that compliance with K.S. A. § 40–2106 was a condition precedent to solicitations of proxies under his regulations. Rather, he merely refused to permit a procedure which would indirectly accomplish that which the statute directly forbade—the disclosure of stockholders' lists. Although the Court is in complete agreement with the Commissioner's ruling, it does not in any

way affect the propriety of the relief herein sought. The Court must, therefore, rely on the statute itself to resolve this dispute.

■ One immutable principle of statutory interpretation is that the purpose of a statute is to be determined in the first instance from the words used. When the words are sufficient in and of themselves to convey the legislative purpose and are appropriate to that end, the courts must follow their plain meaning. Perry v. Commerce Loan Co., 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966); United States v. American Trucking Assns., 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); Hunter v. Haun, 210 Kan. 11, 499 P.2d 1087 (1972). As noted by the Tenth Circuit Court of Appeals in Town of Clayton v. Colorado & S. Ry. Co., *supra*, 51 F.2d at 979:

"Where, however, the language is of doubtful meaning, or where adherence to the strict letter would lead to injustice or absurdity, or result in contradictory provisions, it devolves upon the court to ascertain the true meaning. . . . The general design and purpose of a statute should be kept in mind and its provisions should be given a fair and reasonable construction with a view to effecting its purpose and object."

There is no doubt but that the language of K.S.A. § 40–2106 is plain and unambiguous. Although written in permissive terms, the statute was clearly intended to restrict access to membership records pertaining to stock issued and outstanding and the holders thereof without first demonstrating reasonable cause to believe that the officers of the company have mismanaged its affairs. The purpose for such a restriction does not appear from the face of the statute. It is, however, entirely devoid of any mention of proxy solicitations, which are covered in K.S.A. § 40–272, or of any express language even suggesting that a proxy solicitation is conditioned upon compliance with its provisions. Never-

theless, the defendant adamantly maintains that the statute was intended to prohibit the relief herein sought.

The defendant reasons that K.S.A. § 40–2106 was enacted in 1957, when proxy solicitations were in vogue as a method of corporate acquisition, and infers that the statute was intended to impede take-overs of domestic insurance companies. See Blades, "Inspecting Corporate Books and Records: The Stockholder's Uncertain Right," 35 J.K. B.A. 295, fn. 15 (1966). Asserting that the insurance business is impressed with public interest, the defendant contends that K.S.A. § 40–2106 was a recognition by the legislature that, as a matter of public policy, directors and officers of insurance companies should be ousted only upon a demonstration that they have mismanaged the affairs of the company. From the historical milieu of the statute and an assessment of the public policy underlying it, the defendant thus concludes that compliance with its provisions is a prerequisite to any proxy solicitation.

■ Even if the Court were to accept the defendant's statement of the statute's historical background and underlying public policy, it could not read into the statute that which does not plainly appear from its language. It is possible, of course, that the true intention of a legislative body is not expressed by the language employed in a statute, when literally construed. As stated in Town of Clayton v. Colorado & S. Ry. Co., *supra*, 51 F.2d at 979:

"In such cases, the intent of such legislative body can only be effectuated by a departure from a literal interpretation of language employed. Where such intention *is plainly discernible from the provisions of the statute when considered as a whole, the real purpose and intent of the legislative body will prevail over the literal import of the words employed.*" (Emphasis added.)

Unless the *real* purpose is *plainly discernible from the provisions of the stat-*ute, however, the meaning commonly attributable to the words actually used, and the purpose or purposes naturally implied therefrom, must control. Harris v. Harris, 137 U.S.App.D.C. 318, 424 F. 2d 806 (1970).

■ In the case of K.S.A. § 40–2106, there is no legislative history upon which the Court can rely in fairly determining the real or hidden purposes underlying its promulgation. Admittedly, it may naturally be implied that in promulgating the statute, the legislature intended to provide some measure of protection to Kansas insurance companies, their stockholders and policyholders, by restricting access to membership records. Unrestricted access to such records could conceivably lead to many results inimical to the company's interest, including: (1) the disclosure and ultimate compromising of inherently confidential information, particularly the names of holders of policies of insurance and the limits thereof; (2) the unwarranted interference of policyholders into the internal affairs of the company's management; or (3) the subjection of stockholders to unregulated and perhaps false or misleading communications by mischievous intermeddlers. Whatever the precise purposes, however, it may not naturally be implied that the statute was intended to restrict proxy solicitations.

The solicitation of proxies by a corporation's stockholders is an inherent and fundamental right attending the ownership of stock; it affords an effective means of voicing opinions and obtaining representation; it enables stockholders to do collectively that which they could not do individually; and it insures the stockholders' right to know the truth. The right to solicit proxies represents more than merely an opportunity to prevent corporate mismanagement—it permits the stockholders to effect a change in corporate policy, to bring in new and more effective leadership, and to strengthen corporate responsibility. Far from being inimical to the interests of a corporation, whether private or

public, the right to solicit proxies insures a means of protecting those interests.

The Kansas legislature recognized the importance of proxy solicitation by enacting K.S.A. § 40–272 and giving the Kansas Insurance Commissioner authority to develop regulations setting forth a precise procedure by which proxy solicitation could take place. Neither K.S.A. § 40–272 nor the regulations promulgated thereunder require a demonstration of mismanagement as a prerequisite to proxy solicitation or even make reference to K.S.A. § 40–2106.

As previously noted, K.S.A. § 40–2106 merely provides a method by which members and stockholders of an insurance company *may* obtain stockholder records. It is permissive. It neither explicitly nor impliedly suggests that compliance with its provisions is a prerequisite to proxy solicitations. It is true that the solicitation of proxies normally requires access to stockholder records, and that such access is clearly permitted only upon a showing of mismanagement. Accordingly, the desire to solicit proxies, in and of itself, does not afford access to stockholder records. It does not follow, however, that compliance with K.S.A. § 40–2106 is therefore a condition precedent to proxy solicitation.

In conclusion, if the Kansas legislature intended K.S.A. § 40–2106 to restrict the right to solicit proxies, such intent is not discernible from the statute's provisions or from the meaning commonly attributable to the language used. To accede to the defendant's request that the statute be interpreted in line with its nebulous conception of public policy would, in effect, require the Court to act in a legislative rather than in a judicial capacity, since the statute provides no basis for such an extension of its scope. The public policy on any matter is primarily a legislative function. If a policy exists, it may be used to resolve an uncertainty of law, but it cannot override a statute or be used to read into a statute that which does not otherwise appear. As noted in Manufacturers Hanover Trust Co. v. Commissioner, 431 F.2d 664 (2d Cir. 1970):

> "When a statute is 'plain and unambiguous' and there is no evidence of a contrary purpose than the purpose appearing in the precise terms of the statute, it 'transcends the judicial function' to rewrite the statute to conform to considerations of policy."

Accordingly, the plaintiff is entitled to the relief herein sought.

It is therefore ordered that the relief sought by the plaintiff should be, and the same is hereby, granted. The plaintiff shall prepare and submit to the Court and parties: (1) an order appointing a special master to be chosen by the Court; and (2) a protective order insuring the confidentiality of the stockholder records of Victory. Upon entry of those orders, the defendant shall provide the special master with a complete list of its stockholders, their names and addresses, and the number of shares they own.