No. 54,789

SOUTHWESTERN BELL TELEPHONE COMPANY, *Appellant,* v. STATE CORPORATION COMMISSION OF THE STATE OF KANSAS, *Appellee,* and THE BOEING COMPANY, *Appellee.*

(664 P.2d 798)

Opinion filed April 29, 1983.

*Lawrence A. Dimmitt,* of Topeka, argued the cause and *Michael C. Cavell,* of Topeka, was with him on the brief for appellant.

*C. Edward Peterson,* assistant general counsel, argued the cause, and *Brian J. Moline,* general counsel, was with him on the brief for appellee Kansas Corporation Commission.

*Milo M. Unruh,* of Arn, Mullins, Unruh, Kuhn & Wilson, of Wichita, argued the cause, and *Milo M. Unruh, Jr.,* of the same firm, and *Robert R. Sweatt,* of Wichita, were with him on the brief for appellee The Boeing Company.

The opinion of the court was delivered by

HOLMES, J.: Southwestern Bell Telephone Company (Bell) has appealed from a judgment of the district court which affirmed an administrative order of the State Corporation Commission (KCC) in a proceeding wherein The Boeing Company (Boeing) sought relief from the application of certain tariffs for service rendered to Boeing at its military aircraft complex at Wichita.

The Boeing complex at Wichita covers several acres of land and is divided into three major segments by Oliver Street and its intersection with MacArthur Road. Attached as an appendix is a map or drawing of the area. The portion designated "A" includes the general administration building, along with others, and houses the main telephone service equipment for the complex. Service by Bell to portion "A" is charged at what is called an "on-premises" rate while the connecting service to areas "B" and "C" is charged at the "off-premises" rate. The amount charged by Bell under its adopted tariffs is considerably more for "off-premises" service than for the "on-premises" service. Boeing filed a formal complaint with the KCC contending that the off-premises rate being charged for areas "B" and "C" was improperly applied and that the on-premises rate applied to the entire complex. The KCC agreed, and upon appeal, the district court affirmed the KCC order. Bell has appealed that decision.

At the outset it might be well to again set out the appropriate scope of review as provided by the controlling statute, K.S.A. 66-118d. The statute provides, in part:

"Said proceedings for review shall be for the purpose of having the *lawfulness or reasonableness* of the original order or decision or the order or decision on rehearing inquired into and determined, and the court hearing said cause shall have the power to vacate or set aside such order or decision on the ground that such order or decision is *unlawful or unreasonable*." (Emphasis supplied.)

The judicial scope of review in the district court and on appeal is limited to the determination of the lawfulness and reasonableness of the KCC order. It has been generally held that a finding of unlawfulness under various administrative appeals statutes applies to the procedural aspects of the proceedings before the agency and the determination of whether the action taken was within the authority of the agency. *City of Wichita v. Board of Sedgwick County Comm'rs*, 232 Kan. 149, Syl. ¶ 4, 652 P.2d 717 (1982); *Central Kansas Power Co. v. State Corporation Commission*, 221 Kan. 505, 511, 561 P.2d 779 (1977). There is no contention in this case that the KCC order suffered any procedural infirmity or was beyond the authority of that agency to address.

The KCC and the district court based their decisions upon an interpretation of what constitutes a "public highway" as defined

in the Bell tariff under attack. The Bell tariff on file with the KCC since 1953 defines *premises* to be:

"PREMISES:

. . . .

"B. All of the buildings occupied by the same customer, provided that:
1. All of the buildings are located on the same plot of ground which is not intersected by a public highway.
NOTE: *A public highway is considered to mean a vehicular thoroughfare which is governmentally owned."* (Emphasis added.)

Service to all stations *on the premises* are billed at one rate. If some of the customer's stations are off-premises, as defined by the tariff, then a different rate applies. Bell has considered Oliver Street and MacArthur Road to be governmentally owned vehicular thoroughfares and has thus charged Boeing at an off-premises rate for extension telephone service to the areas east of Oliver Street and south of MacArthur Road.

Public utilities in this state, including Bell, are required to file their tariffs with the KCC. K.S.A. 66-108. Rates, fares, tolls, charges, etc. exacted by a public utility from its customers are required to be just, reasonable, not unjustly or unreasonably discriminatory and not unduly preferential. K.S.A. 66-107; 66-110. Tariffs are those terms and conditions which govern the relationship between the utility and its customers. Tariffs may be and usually are initially the handiwork of the regulated utility. *Carter v. American Telephone & Telegraph Company*, 365 F.2d 486, 496 (5th Cir. 1966). Tariffs duly filed, however, generally bind both the utility and the customer. *Teleco, Inc. v. Southwestern Bell Telephone Co.*, 511 F.2d 949, 953 (10th Cir. 1975). Tariffs filed with regulatory agencies must comport with any conditions, schedules and provisions authorized by the agency and amended tariffs and schedules of rates are not effective unless approved by the KCC. *Sunflower Pipeline Co. v. Kansas Corporation Commission*, 3 Kan. App. 2d 683, Syl. ¶¶ 4-7, 600 P.2d 794 (1979). Tariff approval is not given in "desultory fashion or through routine procedures," but must be based upon investigation and hearing at least when the proposed tariff changes existing tariffs. *Kansas Power & Light Co. v. Mobil Oil Co.*, 198 Kan. 556, Syl. ¶ 6, 426 P.2d 60 (1967); K.S.A. 66-117.

It is the position of Boeing that the Note in the Bell tariff precludes it from applying the off-premises rate to the Boeing complex. While no one could argue that Oliver Street and MacArthur Road are not public highways and vehicular thor-

oughfares, Boeing contends they are not "governmentally owned" and therefore all the buildings on, and services to, the Boeing Wichita complex are on one plot of ground and are subject to the on-premises rate for telephone service.

Oliver Street and MacArthur Road came into being as "public highways," by virtue of the Law of Kansas, 1872, ch. 181. That act declared,

"That all section lines in the counties of Republic, Jefferson, Cloud, McPherson, Butler, Montgomery, Chase, Mitchell, Osborne, Miami, Sedgwick, Sumner, Neosho, Cherokee, Labette and Crawford be and are hereby declared public highways."

The common law of this state, however, has declared for many years that such public highways only grant an easement to the public on the land. The fee title, according to the vintage case of *Comm'rs of Shawnee Co. v. Beckwith*, 10 Kan. 603 (1873), is never "owned" by the government but continues vested in the abutting landowner(s). In *Beckwith* the court held:

"In this state it would seem that by the laying out and establishing of a road or highway the public acquire only an easement in the land. The fee in the land never passes to the public, but remains in the original owner." Syl. ¶ 2.

In *J & S Building Co. v. Columbian Title & Trust Co.*, 1 Kan. App. 2d 228, 563 P.2d 1086 (1977), the Court of Appeals recognized the distinction between public highways in which the public merely had an easement and those in which the public, through the government, owns fee title. The court stated:

"The distinction to be drawn between common law dedication on the one hand and statutory dedication on the other was recognized early in the law of this state as illustrated in two cases decided in 1873. In *Comm'rs of Shawnee County v. Beckwith*, 10 Kan. 603, a non-platted, non-city highway was held to be owned in fee by the adjoining landowners, but in *Atchison & N.R. Co. v. Garside*, 10 Kan. 552, the fee of a street dedicated under what is now K.S.A. 12-406 was said to vest 'absolutely' in the county. It has long been established that the fee of a statutorily dedicated street vests in the county in trust, while control of the street rests in the city. (*Douglas County v. City of Lawrence*, 102 Kan. 656, 171 Pac. 610.)" p. 234.

Thus, it is obvious that the fee title to public highways in Kansas may or may not be governmentally owned, depending upon the circumstances which established the highway.

The KCC based its order on the finding that "governmentally owned" as used in the Boeing tariff could only apply to the fee ownership as contemplated by the common law. Two experts, both prominent real estate attorneys in Wichita, testified at

length about the title to the Boeing real estate. Both were of the opinion that as Boeing owns the property on both sides of Oliver Street and MacArthur Road, the bare fee simple title to the property occupied by the highways was vested in Boeing. The expert witness for Bell, however, was of the opinion that "governmentally owned" as used and contemplated in the Bell tariff could and did apply to something other than fee simple title to the property. The controlling question before this court is the reasonableness of the construction applied to the Bell tariff by the KCC.

While we have found no Kansas cases which speak to the rules of construction in interpreting public utility tariffs, authorities from other states are generally in accord that such rules are similar to those adopted for the construction of statutes. The KCC in determining that the public highways running through the Boeing complex were not governmentally owned relied solely upon one isolated phrase contained in K.S.A. 77-201 *Second*. K.S.A. 77-201 sets forth general rules to be followed in the construction of statutes. It provides in part:

"*Second.* Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning."

In its order the KCC made, *inter alia*, the following findings:

"9. The testimony at hearing served to narrowly focus the issue before the Commission in this proceeding. The Bell tariff for on-premises Private Line Service, (Private Line Service Tariff Section 1.5, 5th Revised Sheet 21, 'Definitions') reads in pertinent part:

Premises

B.  All of the buildings occupied by the same customer, provided that:
    1.  All of the buildings are located on the same plot of ground which is not intersected by a public highway.
    NOTE:   A public highway is considered to mean a vehicular thoroughfare which is governmentally owned.

(TR.I, p. 68) Boeing claims that all the buildings in its complex are located on the same plot of land that is owned in its entirety by Boeing. Boeing presently owns the land in fee simple subject to an interest held by the City of Wichita in connection with the issuance of industrial revenue bonds. Boeing argues that the public thoroughfares therefore cannot be governmentally owned, and the on-premises tariff should apply. Bell advances a contrary interpretation of the term governmentally owned: that the county owns the road *surface* and that such ownership is sufficient to warrant application of the off-premises tariff to Boeing.

"10. Much simplified, the task before the Commission in determining which

tariff must be applied to Boeing is to interpret the term 'governmental ownership' as it appears in the tariff. Kansas courts have provided little guidance for interpreting tariffs, but previous decisions of regulatory bodies and courts of other jurisdictions offer ample assistance:

1) A legally established tariff should be construed in the same manner as a statute. *Coca-Cola Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 608 F.2d 213 (5th Cir. 1979); *W. P. Brown & Sons Lumber Co. v. Louisville & N. Ry. Co.*, 7 F. Supp. 593 (D. Ky. 1934). Kansas does have rules for statutory construction which include: (a) words will be given their ordinary meaning, K.S.A. 77-201 Subd. 2; *Stephens v. Van Arsdale*, 227 Kan. 676 (1980); *Lincoln Am. Cor. v. Victory Life Ins. Co.*, 375 F. Supp. 112 (D. Kan. 1974); and (b) a legal presumption exists in favor of the natural and popular meaning of words used in the statute, *State ex rel. Schneider v. Kennedy*, 225 Kan. 13 (1978). It should be noted, however, that in construing statutes words which have acquired peculiar and appropriate meaning in law shall be so construed. K.S.A. 77-201 Subd. 2.

2) Consistent with Kansas' rules for statutory construction, *tariff* schedules are to be construed as a whole, including footnotes, from the ordinary and popular meaning of the words used. *Raymond City Coal & Trans. Corp. v. New York Central Ry. Co.*, 103 F.2d 56 (1939). Special interpretations are to be used in construing words which have acquired peculiar meaning through trade usage or which have a peculiar meaning indicated by the context of the tariff. *Id.*

3) Tariffs should be interpreted without resort to subtle or forced language constructions. *Re New York Edison Co.* 5 PUR (NS) 313 (1934).

4) Tariffs should be construed consistent with the intent of the framers of the tariff. *Re Eastern Airlines* (C.A.B.) Docket No. 4158, April 18, 1950. Interpretation of tariffs should be reasonable and, preferably, consistent with the purpose of the tariff. *Coca-Cola Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 608 F.2d 213 (5th Cir. 1979).

5) Ambiguities or situations where two or more tariffs are applicable should be resolved against the utility. *Strickland Transportation Co. v. United States*, 334 F.2d 172 (5th Cir. 1964). This rule has been applied to tariffs of electric utilities, *Re New York State Electric & Gas Corp.*, 5 PUR NS 51 (1934), to railroads, *Indiana Harbor Belt Ry. Co. v. Stern (Jacob) & Sons*, 37 F. Supp. 690 (1941), and to motor carriers, *Bolin Drive-A-Way Co. v. U.S.*, 283 F.2d 697 (1960); however, the rule has not been applied to interpret the tariff of a telephone company.

"11. The pivotal rule in this instance appears to be the second rule listed above requiring the use of particular legal meanings which may have attached to the term in question. The question of ownership of roads and highways has been prevalent in Kansas Law for over 100 years, and the term ownership has acquired a particular meaning in this context. The question is now well-settled that owners of property abutting a county road—as is the case here—own all the land in the roadway subject to an easement for use as a public highway. *Commissioners of Shawnee County v. Beckwith*, 10 Kan. 603, 607 (1873); *J. & S. Building Co. v. Columbian Title & Trust Co.*, 1 Kan. App. 2d 228, 232-233 (1977). Even though the ordinary layman's understanding *may* be that the roads running through

Boeing's property are 'owned' by government (i.e., the county) (Tr.I, p. 48), the exception to the rule of ordinary interpretation must be applied here. Application of this meaning compels the conclusion that the roads in the Boeing complex are *not* governmentally owned because ownership rests with Boeing. Consequently, the roads intersecting Boeing's property are not the kind of public highways that would prevent Boeing from receiving the on-premises tariff." (Emphasis in original.)

In *Stephens v. Van Arsdale*, 227 Kan. 676, 608 P.2d 972 (1980), this court stated:

"Words in common usage are to be given their natural and ordinary meaning in arriving at the proper construction of a statute." p. 684.

We are of the opinion that the KCC placed undue weight upon the application of K.S.A. 77-201 *Second* to the facts in this case. While it is true that the statute states that *one* of the rules of construction is that words which "may have acquired a peculiar and appropriate meaning in law, shall be construed" accordingly, an application of the rule which results in inconsistent and absurd results or is contrary to common usage and understanding is to be avoided. This particular element of the statute is not to be singled out and applied to the exclusion of all other rules of statutory construction which must also be considered and given appropriate weight. As pointed out by the KCC in its order, the construction placed upon the term "governmentally owned public highway" is "perhaps foreign to the layman." Oliver Street and MacArthur Road are major thoroughfares in the Wichita area and although subject to some measure of traffic control by Boeing for the movement of its aircraft and employee traffic, they are maintained and principally controlled by the public through its appropriate governmental entity. There can be no doubt that the government owns the improvements in the roadbed and adjacent thereto and is responsible for maintenance and control of the public easement. We are of the opinion that the extent of government ownership of the public highway necessary to invoke the Bell off-premises tariff does not require and does not contemplate fee title ownership. Testimony was introduced that when it is necessary to provide services across a public highway, the expense to Bell is considerably more than that incurred in crossing a private roadway. In the case of a private roadway, the expense is borne by the owner but when a public highway or thoroughfare is crossed, the expense is borne by Bell.

The reasonableness prong of judicial review in this type of case is generally satisfied when the order of the KCC is based upon substantial competent evidence. *Jones v. Kansas Gas and Electric Co.,* 222 Kan. 390, Syl. ¶ 2, 565 P.2d 597 (1977); *Kansas-Nebraska Natural Gas Co. v. State Corporation Commission,* 217 Kan. 604, 538 P.2d 702 (1975). Bell challenges the order of the KCC in this court by saying that the court has authority to substitute its judgment for that of the KCC. Bell claims that the construction of the tariff in issue is a question of law and that the court may substitute its judgment for that of the KCC on a question of law. It has been said that in regard to questions of law addressed initially by an administrative agency the court is the final authority. *Richardson v. St. Mary Hospital,* 6 Kan. App. 2d 238, 242, 627 P.2d 1143, *rev. denied* 229 Kan. 671 (1981); Ryan, *Judicial Review of Administrative Action - Kansas Perspectives,* 19 Washburn L.J. 423, 432 (1980). The issue before this court is strictly one of law; whether the term "governmentally owned public highway" as used in the Boeing tariff means that the government must own the fee title to the highway area or whether the public ownership of the easement subject to governmental control is sufficient. The public through its governing body has substantial ownership interests in a public highway which are generally recognized and understood by members of the public.

To construe the Bell tariff in such a manner that section line roads in certain counties as specified in the Laws of Kansas, 1872, ch. 181, § 1, are not governmentally owned public highways while other roadways established by plat or other statutes are, would indeed lead to incongruous results. No such construction of the tariff is required or warranted by the ordinary rules of construction or by the specific provision of K.S.A. 77-201 *Second.* Such a construction of the language and tariff in question is unreasonable as a matter of law.

The judgment of the district court is reversed and the case is remanded with directions to vacate or set aside the order of the KCC pursuant to the provisions of K.S.A. 66-118d.

APPENDIX

BOEING MILITARY AIRPLANE COMPANY
A DIVISION OF THE BOEING COMPANY