R. Douglas Sebelius Norton County Attorney P.O. Box 10 Norton, Kansas 67654
Dear Mr. Sebelius:
As Norton County Attorney, you ask a number of questions that relate to Norton County's authority to regulate the subsurface use of county section line roads.
In 1874 the Kansas Legislature declared all section lines in Norton County to be public highways.[1] The statute provided upon application of "ten freeholders or householders" who asserted that "public convenience require[d] the opening of such road," that the county commissioners notify the road overseer. The overseer would then open the road "at least fifty feet and not over sixty feet in width, along said sectional line."[2] It is the subsurface of these roads within Norton County about which you ask the following questions:
 1. Does the County have authority to deny a request for use of its road right-of-way to bury pipelines, cable or conduit?
 2. May the County regulate the use of the subsurface of the road right-of-way by requiring application for an easement or permit?
 3. May a land owner, who owns the real estate on each side of the center line of a County road, legally bore under the surface of the road without obtaining consent for an easement of the County's Board of Commissioners?
 4. Is there a depth below the surface of the County road or ditches within the right-of-way to which the County can lawfully regulate?
Our analysis begins with a Kansas case decided in 1873, one year before section lines were declared public highways in Norton County. The Supreme Court was adamantly clear regarding a county's legal interest in such roads:
 "[I]t is fundamental that no man can be divested of his land, or any part or portion thereof, or any interest therein, through the exercise of the power of eminent domain (or in fact through the exercise of any other power,) except under the provisions of express and positive constitutional or statutory law, and that he cannot be divested through the exercise of such power of any more or greater interest in his land than the constitution or statutes expressly provide for. In this state the statutes provide for the establishment of public roads and highways, (Gen. St. 897, c. 89;) but both the constitution and the statutes are silent as to how much of the land, or what interest therein, shall pass to the public, and how much of the land, or what interest therein, shall remain with the original proprietor. Therefore we would infer that nothing connected with the land passes to the public, except what is actually necessary to make the road a good and sufficient thoroughfare for the public. The public obtains a mere easement to the land. It obtains only so much of the land, soil, trees, etc., as is necessary to make a good road. It obtains the right for persons to pass and repass, and to use the road as a public highway, and nothing more. The fee in the land never passes to the public, but always continues to belong to the original owner. He continues to own the trees, the grass, the hedges, the fences, the buildings, the mines, quarries, springs, water-courses, in fact everything connected with the land over which the road is laid out, which is not necessary for the public use as a highway. He may remove all these things from the road, or use and enjoy them in any other manner he may choose, so long as he does not interfere with the use of the road as a public highway. No other person has any such rights. In fact, the original owner has as complete and absolute dominion over his land, and over everything connected therewith, after the road is laid out upon it as he had before, except only the easement of the public therein."[3]
Over the years the Kansas Supreme Court has favorably cited this case numerous times,[4] most recently again in reference to section line roads stating:
 "The common law of this state, however, has declared for many years that such public highways only grant an easement to the public on the land. The fee title, according to the vintage case of Comm'rs of Shawnee Co. v. Beckwith, 10 Kan. 603
(1873), is never "owned " by the government but continues vested in the abutting landowner(s)."[5]
In 1982 this office was asked to opine on a question involving the authority of a board of county commissioners to grant an easement along a township road for the purpose of allowing a city to install a water pipeline. The opinion concluded that if the county possessed only an easement, it had "only the right to maintain the road for public use. The abutting landowners, as fee holders of the servient estate, would have the right to use any part of the affected land in any manner not inconsistent with the public's use of the highway. Therefore, they, not the county, have the right to grant, sell or convey such additional easements as they wish, as long as the use of the road is not interfered with."[6]
In 1987 this office was again asked to opine on whether a board of county commissioners had authority to permit, without permission of adjacent landowners, seismic testing on county roads for non-profit education purposes in furtherance of a legitimate public purpose. In that situation the county held only an easement to create and maintain a county road for the purpose of public travel. Based on case law relating to easements, we determined that the "public right allows the county to approve any use directly or indirectly advancing that purpose. Permission from the county for any other uses, even for uses advancing other public purposes, improperly extends beyond the character and nature of the easement granted."[7] We concluded that the use of seismographic equipment was not a use that directly or indirectly advanced the purpose of public travel, and thus the county had no authority to grant (or deny, we might now add) permission for the use of seismographic equipment on county roads. It was from the landowner, not the county, that permission was needed.
Ownership interests in relation to a section line road are, therefore, quite clear in this state. The county has an easement to make and maintain a good road for use by the public. [We hasten to add, however, that Kansas courts recognize a distinction between public highways in which the public merely has an easement and those in which the public, through the government, owns fee title. Fee title to public highways in Kansas may or may not be governmentally owned, depending upon the circumstances which established the highway.[8] "Where lands are platted into lots and blocks, and streets and alleys are dedicated to public use, the fee to the streets and alleys is in the county [or city], and a purchaser of a particular lot obtains no interest in the street in front or the alley in the rear of his lot. On the other hand, where a highway is laid out by the county, usually all it secures is a right of use and the landholder retains the fee, subject to the public easement."[9]] The land and everything connected to the land over which the road is laid belongs to the landowner who may use his land in any manner that is not inconsistent with or frustrates the public's use of the road.[10] Therefore it is the landowner, not the county, who has the right to grant, sell or convey such additional easements as long as the use of the road is not compromised.
What has not been specifically decided under Kansas law is a county's authority to regulate the subsurface use of section line roads for which the county holds an easement. However, in addressing an abutting property owner's right of access to a public highway, the Kansas Supreme Court stated:
 "The owner of property which abuts an existing street or highway has two distinct kinds of rights in a highway, a public right which he enjoys in common with all other citizens, and certain private rights which arise from his ownership of property contiguous to the street or highway, and which are not common to the public generally.
. . . .
 "The private rights of an abutting property owner on an existing street or highway are subordinate to the right of the public to proper use of the street or highway. Thus, the exercise of the rights of abutting owners is subject to reasonable regulation and restriction for the purpose of providing reasonably safe passage for the public, but regulations or limitations cannot be sustained which unduly or unreasonably curtail or restrict the rights of the abutting owner."[11]
In an elaboration of this principle (in the context of a city's easement for public sidewalks), the Florida Supreme Court has said:
 "The city has the right to require the appellant to procure a permit before making an opening in the sidewalk, and it has the right to see that proper safeguards are thrown about the work, and that in its progress the right of the public to use the sidewalk is not unreasonably interfered with. It may also regulate how the excavation shall be made, and the trapdoors or other appliances for closing the opening constructed; but it may not arbitrarily refuse to grant a permit, nor, under the guise of regulation, place an additional burden upon the abutting owner, or make such regulations as would in effect deprive him from exercising the rights recognized in this decision."[12]
Based on the legal principles discussed, your questions may now be answered.
The County has authority to deny a request for use of a section line road right-of-way to bury pipelines, cable or conduit only if the task would impair or frustrate public travel on the road. Being the easement holder itself, the County has no authority to grant an additional easement as a method of regulating the subsurface use of section line roads; thus the County may not require an application for an easement. However, the County may establish reasonable regulations to ensure that use of its easement does not interfere with public travel on county section line roads. An application for a use permit that would allow the County to learn the particular details of an intended project would, in our opinion, be a reasonable method of making this assessment. Additionally, permission to use the land for an intended project would need to be obtained from the landowner.
One detail that you indicate the County may wish to assess and regulate is the depth below the surface of a section line road or ditch for drilling, boring or laying of pipeline, cables, conduits, etc. This is a very fact specific issue that relates to the particular type of land disruption intended. Thus, we can only say that any depth requirement established by the County must be reasonable in light of the circumstances.
The County may also require an abutting landowner who wishes to bore under the surface of a section line road to obtain a use permit before proceeding and to comply with reasonable regulations and restrictions aimed at protecting safe public travel on the road. We note that this concept has been codified in circumstances where "boring" becomes "tunneling":
 "Any person owning land on both sides of the public road may at his own expense tunnel under such road from one side to the other, but he shall construct such tunnel so as not to endanger the public in the use of said road. Before constructing the said tunnel the landowner shall obtain from the officials in charge of such road and county engineer their approval of the place, the kind of tunnel, and the manner of constructing the same. . . ."[13]
However, as the Court in Smith emphasized, regulations or limitations which unduly or unreasonably curtail or restrict the rights of an abutting landowner cannot be sustained.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:jm
[1] L. 1874, Ch. 111, § 1.
[2] Id., § 2.
[3] County of Shawnee v. Beckwith, 10 K. 603, 607-08,10 Kan. 453, 456-77 (1873) (citations omitted).
[4] Martin v. Lown, 111 Kan. 752 (1922); Board ofCommissioners of Jefferson County, 127 Kan. 833 (1929); Strain v.Cities Service Gas Co., 148 Kan. 393 (1938); Mall v. C. W. RuralElectric Co-operative Association, 168 Kan. 518 (1950); Sutton v.Frazier, 183 Kan. 33 (1958); J S Building Co. v. Columbian Title Trust Co., 1 Kan. App. 2d 228 (1977); Southwestern Bell TelephoneCo. v. State Corp. Com's of State of Kan., 233 Kan. 375 (1983).
[5] Southwestern Bell, supra note 4, at 378.
[6] Attorney General Opinion No. 82-228.
[7] Attorney General Opinion No. 87-183.
[8] Southwestern Bell, supra, note 4.
[9] Luttgen v. Ergenbright, 161 Kan. 183, 191 (1946).
[10] Carpenter v. Fager, 188 Kan. 234, 236 (1961).
[11] Smith v. State Highway Commission, 185 Kan., 445, 451-52
(1959) (emphasis in original).
[12] Kress Co. v. Miami, 82 So. 775, 777 (1919). See also
Annot., Right of abutting owner to permanent use of subsurface of street or highway, 7 A.L.R. 646; and 39 AmJur2d, Highways Streets, and Bridges, § 174, Subsurface uses.
[13] K.S.A. 68-544.